COBI BURNETT
Deputy District Attorney
Nevada State Bar Number 16505
One South Sierra Street
Reno, NV 89501
cburnett@da.washoecounty.gov
(775) 337-5700
ATTORNEYS FOR WASHOE COUNTY
AND COUNTY DEFENDANTS

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

EWU MEDIA LLC, *et al.,*

       Plaintiffs,

vs.

PERSHING COUNTY ex rel. PERSHING
COUNTY SHERIFF'S OFFICE, et al.,

       Defendants.

Case No.  3:25-CV-00492-ART-CSD

**WASHOE COUNTY DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE**

**(ECF No. 1)**

Defendants Washoe County ex rel. Washoe County Sheriff's Office ("WCSO"), and WCSO Deputy Jackson Crews ("Deputy Crews") (collectively "Washoe Defendants"), by and through counsel, hereby file their Reply in Support of Motion to Dismiss (ECF No. 9).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiffs' Opposition (ECF No. 35) confirms dismissal with prejudice is warranted. Plaintiffs fail to plausibly plead First Amendment violations, retaliation, Deputy Crews's individual participation, a *Monell* policy or custom, entitlement to injunctive relief, or viable negligent training claims. As a matter of law, the Court must take notice of the contents of the Federal Register containing the Burning Man Closure Order, which establishes that the Burning Man Festival Site was closed to the public on September 28, 2024, defeating Plaintiffs' forum and wrongful trespass First Amendment theories as a matter of law. Also, by law, discretionary act immunity bars the negligent training claim. The Court should dismiss claims against Washoe Defendants with prejudice.

## II. LEGAL ANALYSIS

### A.    The Exhibits are Permissible on the Instant Rule 12(b)(6) Motion.

A "motion to dismiss is not automatically converted into a motion for summary judgment whenever matters outside the pleading happen to be filed with the court and not expressly rejected by the court and not expressly rejected by the court." *North Star Intern. v. Arizona Corp. Com'n*, 720 F.2d 578 (9th Cir. 1983). Courts have "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." *Urb. Outfitters, Inc. v. Dermody Operating Co., LLC*, 572 F. Supp. 3d 977, 993 (D. Nev. 2021) (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 (3d ed. April 2021 Update)). Notwithstanding, judicial notice of the contents of the Federal Register is required. 44 U.S.C. § 1507.

Here, Plaintiffs' request to exclude or convert Washoe Defendants' Motion fails. The Special Recreation Permit ("SRP"), Federal Register Closure Order, and map (ECF Nos. 9-1, 9-2, 9-3), are incorporated by reference *and* subject to judicial notice. The Complaint (ECF No. 1) necessarily relies on the SRP and its related Closure Order and Closure Map to form the basis of the claims presented, i.e. that Plaintiffs had a right to be present at the Burning Man Festival Site on September 28, 2024. *Id.* at ¶¶33–47, 68–122. The First Amendment Claims are based on Plaintiffs' belief that they had a right to enter the area during the permit period. *Id.* The Fourth Cause of Action specifically asks the Court to declare Plaintiffs' rights under the SRP. *Id.* at ¶¶110–12. The SRP identifies the approved area of operation as the "2024 Burning Man Event Area—Closure Area within the Black Rock Desert–High Rock Canyon Emigrant Trails National Conservation Area," and sets the permit term until October 1, 2024, with attached stipulations. (ECF No. 9-1 at p. 5). In addition to forming the basis of Plaintiffs' claims, Plaintiffs allege the contents of the SRP. (ECF No. 1 at p. 3 lns. 3–10, ¶¶33–38, 47, 110, 112). The SRP, Closure Order, and Closure map are properly considered on a motion to dismiss as incorporated by reference because Plaintiffs' claims

challenge whether their access and filming on September 28, 2024, were barred by the permit's scope and conditions, and because the Complaint itself alleges the contents thereof.

Next, the contents of the Federal Register exhibit (ECF No. 9-2) must be judicially noticed under 44 U.S.C. § 1507. The Bureau of Land Management's ("BLM") Federal Register notice provides a temporary closure "for a 66-day period each year from 2023 through 2027," with defined pre-event, event, and post-event closure phases, and temporary restrictions such as, the "public closure area is closed to entry and use by members of the public" with certain exceptions. (ECF No. 9-2).[1] Judicial notice of this content is required, and the Court need not accept Plaintiffs' contradictory allegations. *United States v. Woods*, 335 F.3d 993, 1001 (9th Cir. 2003).

Likewise, the SRP and Closure Map exhibits (ECF No. 9-1; 9-3) are also subject to judicial notice as public records. Plaintiffs do not dispute the authenticity of any exhibit. (ECF No. 35 at p. 5 ln. 6). Exhibits 2 and 3 are public records that contain information accurately and readily determined from reliable sources, which can be used on a dismissal motion. *See* F.R.E. 201(b)–(c). The Closure Map is likewise a proper subject of judicial notice as part of the Federal Register notice's referenced materials describing the closure's geographic scope. (ECF No. 9-3). Therefore, Washoe Defendants submit that this Court may consider the SRP, the Federal Register closure order, and the associated closure map without converting the motion to summary judgment.

**B.    Plaintiffs Fail to State Any First Amendment Claim.**

Plaintiffs' claims rely on their allegation that the Burning Man Festival Site was open to the public when Plaintiffs entered the area on September 28, 2024. (ECF No. 1 at ¶¶33–37). The contents of the Federal Register establish that, on September 28, 2024, the Burning Man Festival Site was closed to the public. (ECF No. 9-2 at pp. 2, 5). This closure

---

[1] Contrary to Plaintiffs' implication, the 2019 Closure Order similarly closed the areas to the public in two phases, with a lengthy post-event cleanup and breakdown closure phase. *See* 84 FR 31904-01, 2019 WL 2764317. (ECF No. 35 at p. 5).

rendered the area, at minimum, a nonpublic forum for First Amendment purposes and subject to Burning Man Project and BLM's exclusive control. *Id.* at §G, §J. Plaintiffs allege state and federal First Amendment claims because they were excluded from the Burning Man Festival Site, and a First Amendment Retaliation claim arising out of the formal trespass order. However, Plaintiffs' pleading cannot convert the temporary federal closure area into any type of public forum nor overcome the neutral and reasonable nature of the restrictions.

While Plaintiffs describe Washoe Defendants' argument as a "power to eject journalists that it does not want reporting on its activities…" (ECF No. 35 at p. 7, lns. 8-13), the closure order provided Burning Man Project the ability to exclude whomever they wished to exclude during the closure. *See* (ECF No. 9-2 at p. 3). The Opposition contains extensive argument that the incident did not occur during the ticketed Burning Man festival and that Plaintiffs engaged in what would otherwise be constitutionally protected activity. (ECF No. 35 at pp. 6–10). These arguments are irrelevant as to whether the area was closed and under private control, and therefore not afforded any First Amendment protection, on September 28, 2024. Plaintiffs' First Amendment claims fail because the Burning Man Festival Site was not a public forum on the date Plaintiffs entered the area. The restriction, closing the area to the public subject to exceptions, was viewpoint neutral, reasonable, and therefore lawful.

### i. The Area was a Nonpublic Forum During the Federally Ordered Closure.

Federal law requires this Court to recognize the Closure Order published in the Federal Register. 44 U.S.C. § 1507; (ECF No. 9-2). The Court cannot simply turn a blind eye to the contents of the Federal Register and need not accept as true allegations that contradict judicially noticeable facts. 44 U.S.C. § 1507; *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). The Closure Order outlines a 66-day "temporary closure" of two phases for Burning Man, which includes 26 days of post-event closure for event breakdown and cleanup. (ECF No. 9-2 at p. 1). It unambiguously states that "the public closure area is **closed to entry and use by members of the public**" unless certain exceptions apply. *Id.* at p. 4, §J (emph. added). Even excluding the SRP, the Complaint alleges the dates required to apply

the closure periods set forth in the Federal Register, which confirms that September 28, 2024, fell within the post-event Phase II closure. *Id.* at p. 1; (ECF No. 1 at ¶30).

Similarly, the SRP confirms the area closure and nonpublic status. (ECF No. 9-1). Plaintiffs point to form language in the SRP, which states "**Except as expressly stated**," the SRP is for nonexclusive use. (ECF No. 35 at p. 6 lns. 20–22) (emph. added). However, the face of the SRP *expressly* states its "Approved Area of Operation," is the "2024 Burning Man Event – **Closure Area within the Black Rock Desert**…" (ECF No. 9-1 at p. 5) (emph. added). BLM further checked "yes" on the box for "Additional Stipulations are Attached." *Id.* The stipulations discuss area closure and fees Black Rock City must pay including any applicable "exclusive use fee." *Id.* at p. 15, p. 16 at ¶8, p. 22 at ¶30. Washoe Defendants cited *Maldonado v. City & Cnty. of Denver, Colorado*, No. 1:20-CV-03098-RBJ, 2021 WL 4553024, at *3 (D. Colo. Oct. 5, 2021), to explain that public land can be closed off during certain periods during events. That case addressed an established venue that hosts concerts and other short events. Public land closure is precisely what occurred here: BLM contracted with Burning Man Project to close certain areas of the Playa for 66 days each year, allowing them to build a temporary city, host the large Burning Man Festival, and then safely break down the city and restore the land. (ECF Nos. 9-1, 9-2). During those 66-day periods, the closure area is a nonpublic forum. (ECF No. 9-2 at p. 1); *Maldonado,* No. 1:20-CV-03098-RBJ, 2021 WL 4553024, at *3 (D. Colo. Oct. 5, 2021).

Plaintiffs attack a straw man regarding other cases Washoe Defendants cited. (ECF No. 35 at p. 8). Two cases were cited not for forum analysis, but for propositions that the First Amendment does not grant a right to trespass and there is no First Amendment right to expression where property is closed to the public, i.e. under private control. *Devi v. Sacramento Bhartiya Sabha*, 2:24-cv-00689-DJC-CKD, 2025 WL 1294944, at *6 (E.D. Cal. May 5, 2025); *Henneberry v. City of Newark*, 13-CV-05238-MEJ, 2017 WL 1493006, at *9 (N.D. Cal. Apr. 26, 2017). When a private party has control of public land, "it is generally not a constitutional violation for a police officer to enforce a private entity's rights." *Villegas v. Gilroy Garlic Festival*

-5-

*Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008). The Opposition does not address this point, and instead argues that despite the Closure Order, they were somehow permitted to express themselves as members of the public in an area closed to the public.

Further, Plaintiffs take issue with the creation and dissemination of the SRP and Closure Order, alleging lack of communication on who could be present, where and at what times. However, clearly stated in the publicly filed Closure Order, the Phase I area is closed for 26 days after the event concludes. (ECF No. 9-2 at p. 1). The SRP conditions Burning Man Project's obligations, while the Closure Order publicly defines who may lawfully enter the closure area and when. *See id.*; (ECF No. 9-1). Washoe Defendants have no input or involvement in how BLM posts or notifies the public regarding these closures. *See id.*

### ii. The Restriction Excluding All Persons from the Closure Areas Was Reasonable and Viewpoint-Neutral.

The temporary closure order and restrictions are reasonable to facilitate BLM's permit for the Burning Man Event and its temporary city, limit its impacts on the public and to protect public safety and public resources. The Closure Order is viewpoint neutral, prohibiting entrance by all members of the public unless they are traveling on a designated road, a ticketed attendee, BLM representative, or Burning Man Project representative or contractor. (ECF No. 9-2, p. 4, §J). The Closure Order notes that the closure is necessary and tailored to safety and operational needs. *Id.* at p. 2. The restrictions are reasonable considering the area's temporary purpose, which centers around the safe construction, operation, takedown, and restoration of a permitted event with up to tens of thousands of people in a remote desert. *Id.* The 26 days of closure for the cleanup process is viewpoint neutral as it emphasizes safety and resource protection. *Id.* All non-expressive constraints stemming from this closure are divorced from viewpoint and reasonably fitted to the temporary event context and space. *Id.* Therefore, restriction closing the area to the public was facially neutral and tied to safety and operational functions, not based upon the content or viewpoint of speech. *Id.* The restriction was not limited to closing the Burning Man Festival Site to journalists, or to Plaintiffs specifically; it was unambiguously and neutrally

closed to all people, regardless of their profession, hobbies, or views on Burning Man. *See id.*

Newsgathering does not confer a right to enter closed areas or disregard lawful closures. Plaintiffs cannot premise a First Amendment right to access closed federal land or to ignore orders to leave during a valid closure period by invoking newsgathering generally. By Plaintiff's logic, thousands of individuals armed with cellphone cameras could enter any area closed to the public under the guise of a First Amendment audit. Though Plaintiffs believe they were excluded for "filming," or because all defendants somehow know of their views on Burning Man, they were not subjected to the Closure Order for any of these reasons. Indeed, in Plaintiffs' first interaction with a Black Rock City associate, he informed Plaintiffs "that the permit was still in effect and motioned for them to leave." (ECF No. 1 at ¶47). The Closure Order applied to Plaintiffs regardless of whether they despise Burning Man, or were obsessed fans looking to prolong the festivities on the Playa. The restriction, a Closure Order, was reasonable and viewpoint neutral.

The First Amendment claims fail as a matter of law because Plaintiffs were not permitted to enter the Burning Man Festival Site on September 28, 2024. This restriction, applicable to all members of the public, was reasonable and viewpoint neutral.

### iii. Plaintiffs Were Lawfully Restricted from the Festival Site During the Closure.

As stated, on September 28, 2024, the Burning Man Festival site was closed to the public and subject to Burning Man's exclusive use. (ECF No. 9-2 at p. 1); (ECF No. 1 at ¶¶30, 34). The controlling point here is that the federal closure order made the Phase 1 area closed to the public on September 28, 2024, subject to enumerated exceptions, none of which were applicable to Plaintiffs. Proper enforcement of those neutral entry conditions by any Washoe Defendant does not transgress the First Amendment. *Villegas*, 541 F.3d at 957.

The Nevada Constitutional claims are analyzed under the federal constitutional standards. *See Coyote Pub., Inc. v. Miller*, 598 F.3d 592, 597 fn. 5 (9th Cir. 2010); *see also* Nev. Const. Art. 1, 9 & 10 (providing no greater protection to speech or assembly activity than the First Amendment of the United States Constitution). Because Plaintiffs cannot establish a

First Amendment violation under the federal closure and SRP framework, their parallel Nevada claims also fail. The Court should dismiss with prejudice Plaintiffs First and Third causes of action for First Amendment claims with prejudice because Plaintiffs had no right to enter the Burning Man Festival Site on September 28, 2024.

### C.   The Retaliation Claim Against Deputy Crews Fails.

The Motion explains that even if Plaintiffs' actions were protected, the First Amendment Retaliation claim fails as to Deputy Crews because there are inadequate causal allegations *and* he lacked personal participation in issuing a trespass order. (ECF No. 9 at pp. 10–12). Plaintiffs concede that Deputy Crews advised Plaintiffs that the Closure Order remained in effect and that they needed to leave, while Pershing Deputy Rogers, not Deputy Crews, issued the trespass warning at Pershing County/BLM's direction. (ECF No. 35 at pp. 11–12). These bases for alleged viewpoint discrimination are unfounded, such as asserting that Deputy Crews asked Plaintiffs to leave based on "retaliatory animus" (ECF No. 35 at p. 12). Plaintiffs lump the idea of personal knowledge of their supposed critical stance on Burning Man to the Defendants as a whole, and hinge causation on the subsequent Pershing County trespass. Plaintiffs do not plausibly allege why Deputy Crews would have any motivation to act based on Plaintiffs' criticisms of Burning Man Project, an entity unaffiliated with Deputy Crews. *See* (ECF No. 1). Plaintiffs only allege Deputy Crews was dispatched after calling law enforcement, spoke to both parties, and stepped back once Pershing Deputy Rogers arrived. *See id.* at ¶¶54–63. Plaintiffs' retaliation theory against Deputy Crews is wholly conclusory. The Retaliation Claim against Deputy Crews fails because Plaintiffs do not and cannot plausibly allege a causal connection between his acts, responding to Plaintiffs' 911 call and interviewing parties, and any alleged protected activity. *DeCastro,* as cited by Plaintiffs, is completely dissimilar here given the Plaintiff was arrested not for trespassing on closed property during a valid closure period in a nonpublic forum, but rather for disruption of a police investigation during a traffic stop. *See DeCastro v. Las*

//

*Vegas Metro. Police Dep't*, No. 2:23-CV-00580-APGEJY, 2024 WL 4189939, at *18 (D. Nev. Sept. 12, 2024).

Additionally, the Retaliation claim fails based on Deputy Crews's lack of personal involvement in issuing a trespass warning. Section 1983 requires that each defendant, through his own actions, violated the Constitution as liability cannot rest on association with others or presence at the scene. *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022). The alleged chilling act is not Deputy Crews's vehicle stop, which was caused by *Plaintiffs* summoning law enforcement, rather it is the trespass warning later issued by Pershing Deputy Rogers. (ECF No. 1 at ¶¶54–56; ¶¶85–100). Separately, Plaintiffs' attempt to recast the Motion's description of the flashing lights as "unsworn fabrication" is a distraction. *See* (ECF No. 35 at pp. 12–13). The question here is whether Plaintiffs' pleaded facts that plausibly allege Deputy Crews' participation. Per Plaintiffs' allegations, the material steps that allegedly chilled speech (the trespass warning) were executed by another deputy from another agency, without any direction, encouragement, or decision-making from Deputy Crews. (ECF No. 1 at ¶¶54–56, 85–100). Plaintiffs do not allege any common plan or joint decision between Deputy Crews and Pershing Deputy Rogers. *See* (ECF No. 1).

The Court should dismiss the Retaliation claim against Deputy Crews because Plaintiffs failed to plausibly allege a causal connection between Deputy Crews's actions and Plaintiffs' alleged protected activities. The Court should also dismiss the claim as Plaintiffs fail to allege Deputy Crews' individual participation in the eventual trespass warning.

### D.     The *Monell* Claims Against Washoe County Fail.

Washoe Defendants moved to dismiss the *Monell* claims because there is no underlying constitutional violation, and even if there was, the claims are inadequately plead. Plaintiffs allege only vague conclusory allegations that Deputy Crews acted pursuant to Washoe's "custom, policy, or practice," and Washoe failed to train him. (ECF No. 1 at ¶¶77, 78, 94, 95). Neither the Opposition nor the Complaint identify a County policymaker, a specific policy, or a pattern of similar incidents; instead, it cites back to Complaint paragraphs

that assert generalized "culture" and "deferring to permit holders" theories without factual references. Additionally, isolated or single-incident allegations do not establish a widespread custom, nor do failure-to-train assertions show deliberate indifference.

Plaintiffs identify no County policy or custom causing a constitutional deprivation and plead no facts showing deliberate indifference or failure to train under controlling standards. Rather, Plaintiffs provide conclusory allegations related to a policy theory resting on the idea that lawful cooperation with federal closure enforcement at a permitted event is unconstitutional, which cannot sustain *Monell* liability. A plaintiff must allege plausible, nonconclusory factual content linking a Washoe County policy/custom or deliberate indifference to the alleged injury before opening discovery. *See Sanghvi v. Cnty. of San Bernardino*, no. 21-55422, 2022 WL 486634, at *2 (9th Cir. 2022) (affirming dismissal of *Monell* claim with conclusory allegations that individuals acted under color of defendants' customs, etc.).

The Court should dismiss the *Monell* claim against Washoe County. Plaintiffs do not plausibly allege an underlying constitutional violation by Deputy Crews or causation by a Washoe County policy, their *Monell* claim fails as a matter of law and dismissal with prejudice is warranted.

### E.    Deputy Crews is Entitled to Qualified and Discretionary Act Immunity.

Even assuming a constitutional violation, Plaintiffs identify no clearly established law that would have put a reasonable officer on notice that advising individuals of an active federal closure and instructing them to leave a closed site violates the First Amendment. Qualified immunity requires dismissal of all federal claims against Deputy Crews. As to the state constitutional claim, NRS 41.032(2) shields Deputy Crews' discretionary, policy-based acts and communications undertaken to respond to a 911 call and to interpret the Federal Closure Order/permit. Even if the claims against Deputy Crews were viable, the Court should dismiss them based on qualified and discretionary act immunity.

//

**F.      Plaintiffs' Injunctive and Declaratory Relief Claims Fail and Are Moot.**

As an initial matter, Plaintiffs' Fourth claim fails because there is no constitutional violation or right to enter the closed area as set forth above. Additionally, Plaintiffs' theory rests on a past, event-specific federal land closure that has expired, and they fail to allege imminent, non-speculative future injury traceable to Washoe County or redressable by injunction against Washoe Defendants. Washoe Defendants stand behind the assertion that it is wholly speculative that Washoe County or Deputy Crews may become involved with Plaintiffs again in the Burning Man Festival Site.

Plaintiffs argue exceptions apply to the Ninth Circuit's mootness doctrine but do not plead facts satisfying both prongs: (1) short duration and (2) reasonable expectation of repetition against the same parties. *See Pub. Utilities Comm'n of State of Cal. v. FERC*, 100 F.3d 1451, 1459 (9th Cir. 1996). First, Plaintiffs identify a recurring federal closure window, but they do not allege that any *Washoe County* conduct within that window necessarily prevents litigation to completion; nor do they allege facts showing why routine prospective relief against Washoe County conduct could not be adjudicated in time. Second, Plaintiffs fail to plausibly allege a reasonable expectation they will again be subjected to the same action by Washoe County, as any future and specific Washoe County involvement is conjectural and does not fit within the mootness exception. Even if there was otherwise a constitutional violation, the Third Cause of Action is moot as to Washoe County and should be dismissed.

**G.      Negligent Training, Supervision, and Retention Fails as a Matter of Law.**

Washoe Defendants moved to dismiss the Fifth claim for negligent training, supervision, and retention because the Nevada Supreme Court has made it clear this claim is unavailable against government entities. (ECF No. 9 at pp. 18–19). Plaintiffs attempt to avoid discretionary-function immunity by asserting bad faith and constitutional violations, but they again offer only conclusions without facts showing that any policymaker acted outside the scope of discretionary authority or codified an unconstitutional policy for which there was no discretion to act. Plaintiffs cite one persuasive federal case, wherein the court

dismissed such a claim. *Lafua v. Las Vegas Metro. Police Dep't*, 2024 WL 5294976, at *3 (D. Nev. Mar. 29, 2024). In *Lafua,* the court acknowledged *potential* for a negligent training claim where a defendant "promulgated discriminatory, unconstitutional policies which they had no discretion to create," as opposed to offering labels about culture and practices. *Id.* There are no such allegations here, which merely recite general elements for a negligent training, supervision or retention claim. (ECF No. 1 at ¶¶116–20). The claim thus fails as a matter of law, and the Court should dismiss it with prejudice.

### H.    Leave to Amend Should Be Denied.

The court considers the following five factors under Rule 15 in assessing the propriety of leave to amend: (1) bad faith, (2) undue prejudice to the opposing party; (3) undue delay, (4) the amendments will be futile, and (5) the plaintiff has previously amended the complaint. *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). The district court may properly deny leave to amend if only one or two of the above factors are fulfilled. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir.2008); *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Any request for leave to amend as an alternative to dismissal should be denied given any amendment would be futile. Here, dismissal rests on dispositive legal grounds including the federal closure in effect, forum analysis, immunities, and the absence of facts establishing individual participation or a *Monell* policy.

### III. CONCLUSION

The Court should dismiss all claims against the Washoe Defendants with prejudice. The Federal Register Closure Order establishing that the Burning Man Festival Site was closed to the public precludes Plaintiffs' ability to amend.

Dated this 3rd day of April, 2026.

By    /s/ Cobi Burnett
         COBI BURNETT
         Deputy District Attorney
         ATTORNEYS FOR COUNTY
         DEFENDANTS

**<u>CERTIFICATE OF SERVICE</u>**

Pursuant to FRCP 5(b), I certify that I am an employee of the Office of the District Attorney of Washoe County, over the age of 21 years and not a party to nor interested in the within action.  I certify that on this date, the foregoing was electronically filed with the United States District Court.  Electronic service of the foregoing document shall be made in accordance with the Master Service List as follows:

MARGARET A MCLETCHIE, ESQ.

LEO S WOLPERT, ESQ.

KATHERINE F. PARKS, ESQ.

MARILYN E. GARTLEY, ESQ.

ANNETTE L. HURST, ESQ.

CHRISTOPHER MIXSON, ESQ.

Dated this 3rd day of April, 2026.

/s/ N. Stapledon
N. Stapledon
