UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| EWU MEDIA, LLC, a Nevada limited liability company; ROBERT FORNEY, an individual; EMMA FORNEY, an individual,<br><br>Plaintiff,<br>v.<br><br>PERSHING COUNTY ex rel. PERSHING COUNTY SHERIFF'S OFFICE; WASHOE COUNTY ex rel. WASHOE COUNTY SHERIFF'S OFFICE; UNITED STATES OF AMERICA ex rel. DEPARTMENT OF THE INTERIOR BUREAU OF LAND MANAGEMENT; BILL GROFFY, in his official capacity; ERIC A. KRILEY, in his official capacity; JON RABY, in his official capacity; BURNING MAN PROJECT, a Nevada non-profit corporation; BLACK ROCK CITY LLC, a Nevada limited-liability corporation; JACKSON CREWS, an individual; KATHRIN ROGERS, an individual,<br><br>Defendants. | Case No. 3:25-cv-00492-ART-CSD<br><br>ORDER ON WASHOE COUNTY DEFENDANTS' MOTION TO DISMISS (ECF No. 9) |

Plaintiffs EWU Media, LLC, Robert Forney, and Emma Forney bring this suit against Defendants for violations of their First Amendment rights under 42 U.S.C. § 1983 and 28 U.S.C. § 2201 for allegedly preventing them from filming clean-up efforts in relation to the 2024 Burning Man Festival. Before the Court is Defendants Washoe County ex rel. Washoe County Sheriff's Office ("WCSO") and WCSO Deputy Jackson Crews' ("Deputy Crews") Motion to Dismiss the Complaint. (ECF No. 9.)

## I. Factual Background

The following allegations are adapted from Plaintiffs' Complaint. (ECF No.

1.)

Plaintiff EWU Media LLC ("EWU Media") produces investigative journalism videos on social media and has regularly reported on the Burning Man Festival run by Burning Man Project and Black Rock City LLC in the Black Rock Desert in Northern Nevada. (ECF No. 1 at 2.)

On or about July 24, 2024, the Bureau of Land Management issued Burning Man Project a permit to close a specified area of the Black Rock Desert-High Rock Canyon Emigrant Trails National Conservation Area for the 2024 Burning Man Festival, effective from July 25, 2024, until October 1, 2024. (*Id.* at 6.) Plaintiffs allege that this permit does not create an exclusive right to use the area by Burning Man Project. (*Id.* at 7.)

On September 28, 2024, Plaintiffs Robert and Emma Forney, managing member and employee of EWU Media, respectively, drove to the Black Rock Desert with the intention to film cleanup efforts at the Burning Man Festival site. (*Id.*) When they arrived, they allege that a man employed by or volunteering for Black Rock City, Inc. or Burning Man Project told them that the permit was still in effect and indicated they should leave. (*Id.* at 8.) Several other vehicles that Plaintiffs allege were affiliated with Black Rock City, Inc. or Burning Man Project subsequently also approached Plaintiffs, stating that they had to leave. (*Id.*) Plaintiffs perceived these actions as a threat or intimidation tactic and requested that a relative call the Pershing County Sheriff's Office "out of fear for their safety." (*Id.*)

According to Plaintiffs, Pershing County Sheriff's Office dispatched Washoe County Sherriff's Deputy Jackson Crews to the scene, who approached Plaintiffs' car "with his vehicle's lights flashing (as if performing a traffic stop)" and spoke to Plaintiffs. (*Id.*) Deputy Crews allegedly told Plaintiffs that the man they claimed was threatening them was not a threat and spoke to two individuals that Plaintiffs believe were employed by or affiliated with the Burning Man Project. (*Id.*)

Then, Defendant Deputy Kathrin Rogers ("Deputy Rogers") of the Pershing County Sheriff's Office arrived, and told Plaintiffs that "based on orders from her sergeant and from the federal BLM, that she would issue them a trespass warning." (*Id.* at 9.) Deputy Rogers then issued a warning citation to Plaintiffs for unlawful trespass, and Plaintiffs drove away. (*Id.*) Plaintiffs allege that they were "chilled from expressing their First Amendment rights as their leaving under threat of being trespassed prevented them from filming on public BLM lands." (*Id.*) Plaintiffs believe that "Defendants have knowledge of Plaintiffs' publicly-stated critical stances towards Burning Man and they were trespassed in retaliation" for those views. (*Id.* at 12.)

## II. Legal Standard

### a. Motion to Dismiss

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Under this standard, a district court must accept as true all well-pleaded factual allegations in the complaint and determine whether those factual allegations state a plausible claim for relief. *Id.* at 678-79.

## III. Analysis

Plaintiffs argue that their First Amendment rights were violated because

they were "forced to cease filming in the Black Rock Desert" and were retaliated against for engaging in protected speech by being given a trespass warning. (ECF No. 1 at 10, 12.) They allege that Defendant WCSO had a custom, policy, or practice of allowing its employees to violate Plaintiffs' rights and that it failed to properly train Deputy Crews. (*Id.*) Defendants claim that Plaintiffs have failed to state a claim against WCSO and Deputy Crews because they do not sufficiently allege that Deputy Crews actually participated or directed the alleged violation of their First Amendment rights. The Court agrees with Defendants.

**a. First Amendment**

Plaintiffs allege that the Defendants "falsely and repeatedly asserted that Plaintiffs were not permitted to film in the area in which they attempted to film," and that as a result of these assertions, they were "forced to cease filming in the Black Rock Desert in violation of their First Amendment rights." (ECF No. 1 at 10.)

To succeed on their First Amendment claims, the Complaint must allege that Defendants (1) acted under color of state law and (2) violated Plaintiffs' First Amendment rights. 42 U.S.C. § 1983. The Complaint must also allege facts from which it may reasonably be inferred that each defendant performed an affirmative act, participated in another's affirmative acts, or failed to perform an act that they were legally required to do, and that such conduct caused a constitutional violation. *See Leer v. Murphy,* 844 F.2d 628, 633 (9th Cir. 1988) (citing *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

Defendants do not dispute that they acted under color of state law. The Complaint, however, does not adequately allege causation as to the Defendants for any of the First Amendment claims. Specifically, the Complaint does not allege, as their Response suggests, that Deputy Crews "participated in unconstitutional conduct by carrying out a seizure in the form of a stop" nor that he told Plaintiffs that they "had to cease filming and leave." (ECF No. 35 at 12.)

Allegations not included in the Complaint cannot be considered in ruling on the Motion to Dismiss. *Twombly*, 550 U.S. at 570. Therefore, the Court dismisses Plaintiffs' First Amendment claim against Defendants Washoe County and Deputy Crews without prejudice and with leave to amend.

**i. *Monell* Liability**

Plaintiffs allege that Defendant Washoe County is liable for a violation of their First Amendment rights because Defendant Crews was acting pursuant to Washoe County's custom, policy, or practice of "deferring to the demands of permit holders regarding trespassing individuals without taking into account those individuals' relevant rights to free speech and assembly under the First Amendment," and that Defendant Washoe County "failed to adequately train Defendant Crews regarding civilians' First Amendment rights." (ECF No. 1 at 5.) Defendants argue that as a threshold matter, Deputy Crews did not violate Plaintiffs' constitutional rights, and therefore, the first step of *Monell* liability fails. In the alternative, they argue even if there was a violation of Plaintiffs' First Amendment rights, that Plaintiffs' allegations fail to meet the standard for a *Monell* claim. (ECF No. 9 at 13.)

To state a claim against a municipality under section 1983, a plaintiff must allege a constitutional violation that a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). In particular, a municipal entity "may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive policy or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). Plaintiffs bring a *Monell* claim under a theory of a policy or custom as well as a failure to train.

To satisfy the requirements of *Monell* under a theory of a custom, policy or

practice, the Complaint must "identify the policy, connect the policy to the municipality and show that [the] injury was incurred because of the execution of the policy." *Gonzalez v. Las Vegas Metro. Police Dep't*, No. 2:12-CV-01247-LDG, 2014 WL 1091012, at *4 (D. Nev. Mar. 18, 2014) (citing *Garner v. Memphis Police Dep't.,* 8 F.3d 358, 364 (6th Cir. 1993)). "Absent a formal governmental policy, a plaintiff must show a longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (internal citation omitted). "The custom must be so persistent and widespread that it constitutes a permanent and well-settled" policy. *Id.* (internal citation omitted). Plaintiffs have not alleged a formal governmental policy. Plaintiffs also do not allege any facts in their Complaint that suggest that Deputy Crews "deferred to the demands of permit holders regarding trespassing individuals." (ECF No. 1 at 5.) Plaintiffs only allege that Deputy Crews approached their car and spoke to them and individuals from Burning Man Project after they themselves had called the Pershing County Sheriff's Office. (*Id.* at 8-9.)

A local government entity's failure to train or supervise its employees can create *Monell* liability where the failure to train or supervise amounts to deliberate indifference to the rights or persons with whom those employees are likely to come into contact. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). It is only where the failure to train or supervise reflects a deliberate or conscious choice by a municipality that the municipality may be liable. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). This requires showing that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation. *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014). A plaintiff must show more than one employee was inadequately trained or supervised. *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1159 (9th Cir. 2012). Plaintiffs only allege that Defendant Washoe County failed to train Deputy Crews,

and that allegation is conclusory. They allege no facts addressing Defendant Washoe County's training program or that the County would have had notice of its omission.

Therefore, Plaintiffs' *Monell* claim based on either theory of an unconstitutional custom, policy or practice or failure to train is dismissed without prejudice and with leave to amend.

**b. First Amendment Retaliation**

Plaintiffs allege that Defendants' threat to cite them for trespassing was done in retaliation for exercising their First Amendment rights to record matters of public interest involving the Burning Man Festival. (ECF No. 1 at 12.) Specifically, they claim that Defendants had knowledge of Plaintiffs' "publicly-stated critical stances toward Burning Man, and they were trespassed in retaliation for their prior anti-Burning Man communications." (*Id.*)

"[A]s a general matter, the First Amendment prohibits government officials from subjecting individuals to retaliatory actions after the fact for having engaged in protected speech." *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)). "If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim." *Id.* (internal quotation marks omitted). To state a claim for First Amendment retaliation, a plaintiff must show "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Bello-Reyes v. Gaynor*, 985 F.3d 696, 700 (9th Cir. 2021).

Plaintiffs allege that they "were chilled from expressing their First

Amendment rights as their leaving under threat of being trespassed prevented them from filming." "[B]y trespassing Plaintiffs," Defendants retaliated against them. (ECF No. 1 at 12.) In the case of the Deputy Crews, Plaintiffs state that Crews "approached their parked car with his vehicle lights flashing (as if performing a traffic stop)" and "spoke with two individual men . . . affiliated with Black Rock City Inc. and/or Burning Man Project." (*Id.* at 8-9.) Plaintiffs do not allege, until their Response, that Deputy Crews' approach of their parked vehicle was an act of retaliation. (ECF No. 35 at 12.) The Complaint specifically attributes the warning citation to Plaintiffs for trespass to Deputy Rogers, not Deputy Crews. (*Id.* at 9.) They also do not offer anything more than conclusory allegations that Deputy Crews was aware of who the Plaintiffs were or their social media background sufficient to establish causation. (ECF No. 1 at 12.) Absent a violation of their constitutional rights by Deputy Crews, Washoe County cannot be held liable under a theory of municipal liability, per the *Monell* analysis above. Therefore, Plaintiffs' claim for First Amendment retaliation is dismissed without prejudice and with leave to amend against Defendants.

**c. Nevada Constitution Art. 1 § 9**

Plaintiff states the same free speech allegations under the Nevada Constitution. Art. 1, §§ 9, 10 of the Nevada Constitution provides:

> Every citizen may freely speak, write and publish his sentiments on all subjects being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press," and that "people shall have the right freely to assemble together to consult for the common good, to instruct their representatives and to petition the Legislature for redress of Grievances.

Nev. Const. art 1, §§ 9, 10. The Nevada Constitution "affords no greater protection to speech activity than does the First Amendment to the United States Constitution," therefore, the appropriate analysis on speech restrictions is identical to that under the First Amendment. *Univ. & Cmty. Coll. Sys. of Nev. v.*

*Nevadans for Sound Gov't*, 100 P.3d 179, 187 (Nev. 2004) (citations omitted).

Having found that Plaintiffs have not stated a claim under either First Amendment theory, the Court dismisses their free speech claim under the Nevada Constitution without prejudice and with leave to amend.

**d. Declaratory Judgment and Injunctive Relief Under 28 U.S.C. § 2201**

Plaintiffs seek a declaration pursuant to 28 U.S.C. § 2201 that (1) they be allowed to view, observe, film, and report on the Burning Man cleanup process; (2) have physical access to the Black Rock Desert; (3) the permit be found to be nonexclusive and that Burning Man Project and Black Rock LLC are prohibited from depriving others of permitted uses of the Black Rock Desert; and (4) that the permit issued to Burning Man Project and Black Rock City LLC by the BLM was unconstitutional as applied to Plaintiffs. (ECF No. 1 at 14-15.) They also seek injunctive relief against all Defendants "enjoining them from trespassing or otherwise interfering with their First Amendment rights to engage in filming the Burning Man cleanup process in the Black Rock Desert." (*Id.* at 15.)

The Declaratory Judgment Act "does not provide an affirmative cause of action where none otherwise exists." *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022). Having dismissed their First Amendment claims, the Court also dismisses Plaintiffs' request for declaratory relief without prejudice and with leave to amend.

**e. Negligent Training, Supervision, and Retention Under Nev. Rev. Stat. § 41.130**

Plaintiffs allege that Defendant Washoe County failed "to train their employees that the Black Rock Desert is a public forum open to the general public, and that they could not lawfully trespass individuals engaged in protected newsgathering there," and Defendant Crews was acting in the course of his official duties as a sheriff's deputy. (ECF No. 1 at 15.) Defendants argue that

Washoe County is subject to discretionary act immunity.

To state a negligent supervision claim in Nevada, "'a plaintiff must show (1) a duty of care owed the plaintiff; (2) breach of that duty' by failing to train or supervise an employee 'even though defendant knew or should have known of the employee's dangerous propensities; (3) the breach was the cause of the plaintiff's injuries; and (4) damages.'" *Evans v. Hawes*, 718 F. Supp. 3d 1351, 1376 (D. Nev. 2024) (quoting *Freeman Expositions, LLC v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 520 P.3d 803, 811 (2022)), *reconsideration denied*, No. 2:22-CV-02171-JAD-DJA, 2024 WL 3330248 (D. Nev. July 8, 2024).

NRS 41.032 grants the State and its political subdivision sovereign immunity from civil liability when a challenged act was discretionary in nature, even if that discretion was abused. *Ransdell v. Clark Cnty.*, 192 P.3d 756, 761 (Nev. 2008); NRS 41.032(2). Nevada has adopted the Supreme Court's *Berkovitz-Gaubert* two-part test for determining whether discretionary-act immunity applies. *Martinez v. Maruszczak*, 168 P.3d 720, 728–29 (Nev. 2007); *Butler ex rel. Biller v. Bayer*, 168 P.3d 1055, 1066–67 (Nev. 2007). A defendant is not liable for an allegedly negligent decision if the decision (1) involves an "element of individual judgment or choice," and (2) is "based on considerations of social, economic, or political policy." *Martinez,* 168 P.2d at 729. The purpose of this exception is "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.*

"[D]ecisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Vickers v. U.S.*, 228 F.3d 944, 950 (9th Cir. 2000); *see also Paulos v. FCH1, LLC*, 456 P.3d 589, 595 (Nev. 2020). "[T]he challenged decision need not actually be grounded in policy considerations so long as it is, by its nature, susceptible to a policy analysis." *Id.*; *see also U.S. v. Gaubert*, 499

U.S. 315, 325 (1991) ("The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by the statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.")

Plaintiffs allege that Defendant Washoe County failed to properly train its sheriffs' deputies. The decisions of which officers to hire, and how to train and supervise them, involve a sufficient element of choice that courts consistently find discretionary, and "decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Vickers,* 228 F.3d at 950 (citations omitted); see also *Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1170, 1192 (D. Nev. 2008) ("Nevada looks to federal case law to determine the scope of discretionary immunity, and . . . federal case law consistently holds training and supervision are acts entitled to such immunity . . ."). Discretionary-act immunity, therefore, applies to Defendant Washoe County with respect to the negligent supervision claims, and the claim is dismissed with prejudice and without leave to amend.

**f. The Court Declines to Judicially Notice or Incorporate by Reference the Documents Related to the Permit**

A district court, generally, "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* A court may also take judicial notice of "adjudicative facts that are 'not subject to reasonable dispute.'" *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (quoting Fed. R. Evid. 201(b)). While a court may take judicial notice of matters of public record, a court "cannot take judicial notice of disputed facts contained in such

public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

Defendants argue that Burning Man Project's Special Recreation Permit ("SRP"), the Temporary Closure Map, and Federal Register closure announcement are all subject to incorporation by reference because they are substantially relied upon by Plaintiffs in the Complaint. (ECF No. 9 at 4.) They claim that these documents prove that the SRP was still in effect when Plaintiffs attempted to film, and therefore the area was not a designated public forum. (*Id.*) Plaintiffs argue that the SRP and closure announcement are "merely mentioned," the map is not mentioned at all, and each document only serves to dispute facts, making incorporation by reference inappropriate. (ECF No. 35 at 5.)

The Court declines to incorporate by reference or judicially notice any documents attached to the Motion to Dismiss because the Court need not consider them in ruling on the motion.

**IV. Conclusion**

It is therefore ordered that Defendants' Motion to Dismiss (ECF No. 9) is GRANTED.

It is further ordered that Plaintiffs' First Amendment, *Monell*, Nevada Constitution, and Declaratory Judgment claims against the Washoe County Defendants are DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO AMEND.

It is further ordered that Plaintiffs' claim for Negligent Training, Supervision, and Retention under Nev. Rev. Stat. § 41.130 against the Washoe County Defendants is DISMISSED WITH PREJUDICE and WITHOUT LEAVE TO AMEND.

//

//

//

Dated this 17th day of August, 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE